UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Allen Redding on behalf of minor son D.R., | |
| Plaintiff, | Civil No. 1:23-cv-25 |
| -vs- | |
| Kenmare Public School, through its Board of Education; Alex Hennix, in her official and individual capacity; Doe Defendants 1-20, in their individual and official capacity, | **SCHOOL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| Defendants. | |

## <u>INTRODUCTION</u>

**[¶1]**    Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Kenmare Public School, through its Board of Education; and Alex Hennix, in her official and individual capacity, (collectively the "School Defendants"), in the above-entitled matter, by and through their undersigned counsel, hereby move this Court, pursuant to Rule 12 of the Federal Rules of Civil Procedure for an Order to dismiss in total, and with prejudice, all of the claims within Plaintiff's Complaint, including:

> <u>Count One</u>: Violation of Title IX of the Education Act Amendments of 1972;
> <u>Count Two</u>: First Amendment Violation;
> <u>Count Three</u>: Fourteenth Amendment Violation;
> <u>Count Four</u>: Breach of Contract; and,
> <u>Count Five</u>: Negligent Infliction of Emotional Distress.

The motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has failed to state a claim upon which relief may be granted.[1]

---

[1] The School Defendants' answer or responsive pleading to Plaintiff's complaint was due April 24, 2023.  ECF 7-8; Fed. R. Civ. P. 12(a)(1)(A)(ii).

1

## STATEMENT OF FACTS ALLEGED[2]

**[¶2]**   Allen Redding, is the father of D.R.[3], a minor and student at Kenmare High School at all times relevant to the allegations contained in the complaint as a ninth-grade freshman pursuing a high school diploma.  ECF 1, ¶¶ 2, 11-12.  Defendant Kenmare School District (the "School District") is a public school district located in Kenmare, North Dakota which employed Defendant Alex Hennix as the superintendent, at all times relevant to the allegations contained in the complaint.  Id. at ¶¶ 3-4.  During the 2021-2022 school year, Plaintiff's class consisted of approximately thirty-three (33) students.  Id. at ¶ 13.

**[¶3]**   The week of September 20, 2021, was "homecoming week" for the Kenmare High School, whose mascot is the "Honker[4]."  Id. at ¶¶ 14-15.  September 22, the Friday of homecoming week, was designated as "Honker Spirit Day."  Id. at ¶ 17.  On Honker Spirit Day, students and teachers were encouraged, but not required, to wear maroon and gold, the school's colors.  Id. at ¶ 18.

**[¶4]**   On September 22, 2021, while Plaintiff was in math class, S.B., a female student, came into math class late with "a gay pride flag draped around her neck."  Id. at ¶ 19.  In response to observing this, Plaintiff stated "this is Honker Spirit Day, not gay pride day."  Id. at ¶ 20.  Plaintiff then told another student his belief that "S.B. should not be allowed to wear a gay pride flag as it was against school policy" because Plaintiff did not consider the flag an article of clothing, but rather he believed it was a full-sized flag draped as a cape around S.B.'s neck.  Id. at ¶¶ 21-23.  Plaintiff does not contend he had any authority to enforce the school policy.  See Id.

---

[2] The facts contained herein are the facts alleged in Plaintiff's complaint.  ECF 1.  Pursuant to the legal standard to evaluate a motion to dismiss, the facts alleged in the complaint are being accepted as true.  However, the School Defendants reserve the right to contest and deny these factual allegations even if the motion to dismiss is denied.  Fed. R. civ. P. 12(b)(4)(A).

[3] This action was brought by Allen Redding on behalf of D.R., his minor child.  D.R. will be referred to herein as "Plaintiff."

[4] A "Honker" is a Canada goose.

[¶5]    During the 2021-2022 school year, the School District's policies were gathered together and made available to students in the Kenmare Public School Student Handbook[5].  Declaration of Alex Hennix, ¶ 2, Ex. 1.  According to the School District's dress code policy, students are expected to dress appropriately for school, with consideration of the following guidelines:

1. Clothing that reveals undergarments, midriffs or backs may not be worn at school or during school sponsored events.
2. Shorts, skirts, and dresses should be an appropriate length and coverage.
3. Articles of clothing with alcohol, tobacco, drugs, obscene or vulgar language or pictures will not be allowed.
4. No caps, hoods pulled over the head, or bandanas.
5. Backpacks will not be allowed in the classroom and must remain in a student's locker during the school day.
6. Students are not permitted to wear coats during school hours. All coats are required to remain in the student's locker.
7. During the COVID19 pandemic, cloth face coverings will be required when social distancing is not possible.

Id. at ¶ 2, Ex. 1, p. 14.  There is no mention of flags or capes anywhere in the Student Handbook.

Id. at ¶ 2, Ex. 1.

[¶6]    Rather, Plaintiff's allegations are based on the current School District dress code policy which states "[i]t is not the intention of the [School District] to limit freedom or expression or communication of ideas, which may be protected by the First Amendment, but any act including: the wearing of potentially disruptive insignia or apparel, which may create a material and substantial disruption of school activity is prohibited."  ECF 1, ¶ 25; see also Decl. of Hennix, ¶ 3, Ex. 2, p. 16.  However, the policy language relied upon by Plaintiff in his complaint was not in place during the 2021-2022 school year, but rather became effective July 7, 2022, 10 months after

---

[5] In considering a motion to dismiss, this Court may consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings or matters of Public record.  See LeMay v. Mays, 18 F.4th 283, 289 (8th Cir. 2021); see also Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir.2003) ("When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint . . . but which are not physically attached to the pleading" (quotation marks omitted)).

the incident alleged in the complaint.  <u>Compare</u> Decl. of Hennix, ¶ 2, Ex. 1, p. 14 <u>with</u> <u>Id.</u> at ¶ 3, Ex. 2, p. 15-16.  Even after the amendment, there is no mention of flags or capes anywhere in the Student Handbook.  <u>Id.</u> at ¶ 3, Ex. 2.

**[¶7]**    On September 24, 2021, S.B. filed a Title IX complaint based on what occurred on September 22, 2021, and Plaintiff was not named in the complaint.  ECF 1, ¶ 33.  On October 4, 2021, Plaintiff was added to S.B.'s Title IX Complaint which resulted in Plaintiff's mother being called by the School District.  <u>Id.</u> at ¶ 36-37.  Plaintiff's mother was unaware Plaintiff was named in a Title IX Complaint because the School District simply requested her to come in to "pick up some paperwork."  <u>Id.</u> at ¶ 37-38.  The School District investigated S.B.'s Title IX complaint against Plaintiff which concluded with a determination Plaintiff violated Title IX.  <u>Id.</u> at ¶ 44

**[¶8]**    Plaintiff asserts the School District's "Title IX Sex Discrimination, Sexual Harassment, and Sexual Violence Policy ("Policy") states in pertinent part that sex discrimination is 'Sexual harassment is defined as the unwelcome sexual advancement, request for sexual favors, and other unwelcome verbal or physical conduct of a sexual nature.'"  <u>Id.</u> at ¶ 39.  However, the Policy further states "[s]exual harassment may include but is not limited to[,] . . . [s]ex oriented verbal 'kidding', abuse, or harassment."  Decl. of Hennix, ¶ 2, Ex. 1, p. 23.

**[¶9]**    As explained herein, the allegations and claims contained within Plaintiff's complaint fail to state a claim upon which relief may be granted, and therefore, dismissal, in total and with prejudice, is warranted.

<u>**LAW AND ARGUMENT**</u>

**I.**    <u>**Motion to Dismiss Standard.**</u>

**[¶10]**    "Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted."  <u>SunBehm Gas, Inc. v. Equinor Energy, LP</u>, 2020 WL 2025355, at *1 (D.N.D. 2020).  "In order to survive a motion to

dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A plaintiff must plead facts that show more than a mere speculation or possibility a defendant acted unlawfully. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  While the court accepts the complaint's factual allegations as true, it is not required to accept a plaintiff's legal conclusions or a "formulaic recitation of the elements of a cause of action."  Berndsen v. N. Dakota Univ. Sys., 395 F.Supp.3d 1194, 1196 (D.N.D. 2019) (quoting Iqbal, 556 U.S. at 678).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and therefore must be dismissed.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

## II.     Legal Standards for Liability Under Title IX of the Education Act Amendments.

**[¶11]**  Title IX of the Education Amendments of 1972 prohibits sex-based discrimination by providing, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal assistance[.]"  Portz v. St. Cloud State Univ., 16 F.4th 577, 580 (8th Cir. 2021) (quoting 20 U.S.C. § 1681(a)).  The two principal objectives of Title IX are to "avoid the use of federal resources to support discriminatory practices," and to "provide individual citizens effective protection against those practices."  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998); see also Thomas v. Bd. of Regents of Univ. of Nebraska, 2022 WL 1491102, at *9 (D. Neb. 2022).  To reach these objectives, Title IX creates a private right of action.  KD v. Douglas Cnty. Sch. Dist. No. 001, 1 F.4th 591, 597 (8th Cir. 2021) (citing Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 639 (1999)).

[¶12]   Under Title IX, sexual harassment includes student-on-student harassment.   <u>Shank v.</u>
<u>Carleton Coll.</u>, 993 F.3d 567, 573 (8th Cir. 2021).  For such a claim, Plaintiff is required to prove
the School District was "(1) 'deliberately indifferent,' (2) 'to known acts of discrimination,' (3)
'which occurred under its control.'"  <u>Id.</u> at 573 (<u>quoting</u> <u>Pearson v. Logan Univ.</u>, 937 F.3d 1119,
1125 (8th Cir. 2019); <u>K.T. v. Culver-Stockton Coll.</u>, 865 F.3d 1054, 1057 (8th Cir. 2017)).
Plaintiff must additionally prove "the discrimination was 'so severe, pervasive, and objectively
offensive that it can be said to deprive the victim of access to the educational opportunities or
benefits provided by the school."  <u>Id.</u> (quoting same); <u>see</u> <u>also</u> <u>Culver-Stockton Coll.</u>, 865 F.3d at
1057.

### III.   Plaintiff's Claim Under Count One for a Violation of Title IX of the Education Act Amendments of Must Be Dismissed for Failure to State a Claim.

[¶13]   Plaintiff asserts the School District committed sex-based discrimination based on the
following allegations:

> ➤ Plaintiff was falsely accused of sexually harassing S.B.
> ➤ Plaintiff was told if he did not stop harassing S.B., a Title IX complaint will be filed against him.
> ➤ The School District continued to investigate Plaintiff for Title IX violations with actual knowledge no Title IX violation occurred.
> ➤ Plaintiff was found guilty of a Title IX violation against the weight of the evidence.
> ➤ The School Defendants had actual knowledge no sex-based discrimination occurred and continued to further Title IX violations against Plaintiff.
> ➤ Hennix was in a position to, but did not take corrective measures to prevent Plaintiff from suffering discrimination.
> ➤ The alleged sex discrimination against Plaintiff was so severe he was barred an equal opportunity to education.
> ➤ Plaintiff's damages are solely emotion and psychological harm.

ECF 1, ¶¶ 56-60.  A liberal reading of Plaintiff's complaint alleges Title IX claims of erroneous
outcome, hostile environment, selective enforcement, deliberate indifference, and retaliation.  <u>See</u>
<u>Does 1-2 v. Regents of the Univ. of Minnesota</u>, 999 F.3d 571, 579 (8th Cir. 2021); <u>Rowles v.</u>
<u>Curators of Univ. of Missouri</u>, 983 F.3d 345, 360 (8th Cir. 2020); <u>Doe v. Univ. of St. Thomas</u>, 240

F.Supp.3d 984, 989 (D. Minn. 2017); Salau v. Denton, 139 F.Supp.3d 989 (W.D. Mo. 2015). However, even considering the liberal pleading standard and the deferential motion to dismiss standard, which requires this Court to accept the complaint's factual allegations as true, Plaintiff's Title IX allegations fail as a matter of law.  See Davis, 526 U.S. at 648–49 (Title IX is not an invitation for courts to second-guess disciplinary decisions and should be construed to give flexibility to school administrators to initiate a reasonable disciplinary response to allegations of Title IX violations).

A.   Plaintiff's Complaint of an Erroneous Outcome of the Title IX Investigation Must Be Dismissed for Failure to State a Claim.

[¶14]   Based on the complaint allegations, the most likely Title IX claim brought by Plaintiff is based on an erroneous outcome of the Title IX investigation and disciplinary proceeding.  To allege an erroneous outcome under Title IX required Plaintiff to assert plausible allegations of circumstances to suggest gender bias motivated the disciplinary hearing[6].  Univ. of St. Thomas, 240 F.Supp.3d at 990; see also Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994) (under an erroneous outcome theory "[a] plaintiff must . . . allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding").  Therefore, under an erroneous outcome claim, Plaintiff must attack the School District's "disciplinary proceeding on grounds of gender bias by arguing that [he] was innocent and wrongly found to have committed an offense." Salau, 139 F.Supp.3d at 998 (citing Sahm v. Miami Univ., 110 F.Supp.3d 774, 778 (S.D. Ohio 2015)).  For an erroneous outcome claim to survive a motion to dismiss, Plaintiff was required to plead "(1) facts sufficient to cast doubt as to the accuracy of the outcome of the disciplinary proceeding; and (2) a causal connection between the flawed outcome and gender bias."  Univ. of

---

[6] The underlying matter in this case is based on comments made by Plaintiff related to sexual orientation, but the claims alleged in the complaint are based on Plaintiff's gender, not sexual orientation.

St. Thomas, 240 F.Supp.3d at 990 n.1; <u>see also</u> <u>Salau</u>, 139 F.Supp.3d at 998 (<u>quoting</u> <u>Sahm</u>, 110 F.Supp.3d at 778).

[¶15]   The causation element of an erroneous outcome claim, required Plaintiff to allege "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." <u>Salau</u>, 139 F.Supp.3d at 998–99 (<u>quoting</u> <u>Yusuf</u>, 35 F.3d at 715).  Sufficient "particular circumstances" include factual allegations such as "statements by members of the disciplinary tribunal, statements by pertinent [school] officials, or patterns of decision-making that . . . tend to show the influence of gender" in the outcome of the investigation.  <u>Sahm</u>, 110 F.Supp.3d at 778 (dismissal warranted because "factual allegations . . . [did] not satisfy any of these traditional means of demonstrating gender bias"); <u>see also</u> <u>Sterrett v. Cowan</u>, 85 F.Supp.3d 916, 937 (E.D.Mich.2015) (motion to amend complaint denied where plaintiff failed to identify any female student, other than the complainant, who was treated more favorably than he was treated).

[¶16]   Furthermore, the treatment of S.B., more favorably than Plaintiff, or other male students, during the Title IX investigative process or disciplinary process is inadequate because, "the mere fact that Plaintiff is male and [the alleged victim] is female does not suggest that the disparate treatment was because of Plaintiff's sex." <u>Salau</u>, 139 F.Supp.3d at 999 (<u>quoting</u> <u>Doe v. Columbia Univ.</u>, 101 F.Supp.3d 356, 371 (S.D.N.Y. 2015)); <u>see also</u> <u>Univ. of St. Thomas</u>, 240 F.Supp.3d at 991.  This is because simply "[d]emonstrating that a [school] official is biased in favor of the alleged victims of sexual [harassment] claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." <u>Salau</u>, 139 F.Supp.3d at 999 (<u>quoting</u> <u>Sahm</u>, 110 F.Supp.3d at 778); <u>see also</u> <u>Univ. of St. Thomas</u>, 240 F.Supp.3d at 991.

[¶17]   Here, Plaintiff does not allege any facts, let alone particularized facts, sufficient to suggest his gender or a bias against his gender was a motivating factor that resulted in an erroneous

disciplinary decision—namely, Plaintiff has not alleged the School District officials made comments that demonstrate gender-biased animus or that there were patterns of decision-making that tended to show the influence of gender in the outcome of his disciplinary procedure. Salau, 139 F.Supp.3d at 999.  In his complaint, under the Title IX claim, Plaintiff alleged the School District committed sex-based discrimination because he was falsely accused of sexually harassing S.B. and the School District continued to investigate, and found, Plaintiff guilty of a Title IX violation against the weight of the evidence. ECF 1, ¶ 56.  Nowhere does Plaintiff allege his gender was a motivating factor for what he characterizes as the School District's erroneous disciplinary decision. See Id.

**[¶18]**   In fact, the term "gender" is mentioned only once in the entire complaint but only in reference to his equally unavailing equal protection claim. Id. at ¶ 69.  As with Plaintiff's failure to allege gender as a motivating factor behind the School District's action, Plaintiff failed to even once allege he was discriminated against based on his gender, or that individuals of the opposite gender, in similar discriminatory circumstances, were treated differently. Id. at ¶¶ 1-50.  This is fatal to Plaintiff's claim of erroneous outcome as the complaint was required to contain allegations of "particular circumstances" of gender-based discrimination in order to survive the School District's motion to dismiss. See Sahm, 110 F.Supp.3d at 778 (particular circumstances include statements by school officials or patterns of gender-based outcomes); Sterrett, 85 F.Supp.3d at 937 (particular circumstances not alleged by failure to identify any female student treated more favorably than plaintiff).

**[¶19]**   Even if the complaint can be read to allege Plaintiff, as a male respondent in a sexual harassment investigation, was discriminated against based solely on his sex, such an allegation fails to establish a pattern of decision-making necessary to show gender bias, because Plaintiff can

only point to one case—his own and no other case where gender was a motivating factor in reaching the outcome.  See Sahm, 110 F.Supp.3d at 778-79.  A generous reading of Plaintiff's complaint, at best, alleges a flawed Title IX investigation and proceeding, which it was not, that led to an adverse and erroneous outcome, which it did not, combined with a conclusory allegation of gender discrimination that is wholly insufficient to survive the School Defendants' motion to dismiss.  See Salau, 139 F.Supp.3d at 999 (quoting Yusuf, 35 F.3d at 715); see also Univ. of St. Thomas, 240 F.Supp.3d at 991.  As such, the School Defendants are entitled to dismissal of Plaintiff's complaint of an erroneous outcome based on the Title IX investigation.

  B. Plaintiff's Complaint of a Hostile Environment Based on the Title IX Investigation Must Be Dismissed for Failure to State a Claim.

[¶20] Assuming Plaintiff's Title IX claim is one premised on hostile environment, such a claim required Plaintiff to assert plausible allegations "1) that [he] belongs to a protected group; 2) that [he] was subject to unwelcome sexual harassment; 3) that the harassment was based on sex; 4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of [his] education and create an abusive educational environment; and 5) that some basis for institutional liability has been established."  Salau, 139 F.Supp.3d at 1000 (quoting Kinman v. Omaha Pub. Sch. Dist. (Kinman I), 94 F.3d 463, 467–68 (8th Cir.1996) rev'd on other grounds by Kinman v. Omaha Pub. Sch. Dist. (Kinman II), 171 F.3d 607, 610 (8th Cir.1999)).  The key question under the third element—whether the harassment was based on sex—"is whether 'members of one sex are exposed to disadvantageous terms or conditions [following code of conduct violations] to which members of the other sex are not exposed.'"  Salau, 139 F.Supp.3d at 1000 (quoting Kinman, 94 F.3d at 467–68).  Therefore, to sufficiently plead a plausible Title IX hostile environment claim, a plaintiff must allege the educational experience, here the Title IX investigation, "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to

alter the conditions" of his educational environment.  Doe v. Washington Univ., 434 F.Supp.3d 735, 753–54 (E.D. Mo. 2020) (quoting Doe v. Miami Univ., 882 F.3d 579, 589 (6th Cir. 2018)).

[¶21]   In Miami University, a plaintiff, who was suspended for violation of the university's sexual assault policy, alleged gender bias in the university's disciplinary process.  Miami Univ., 882 F.3d at 586-88.  It was the position of the plaintiff that this bare allegation was sufficient to constitute a viable hostile environment claim pursuant to Title IX.  Id.  The Court of Appeals, however, held the allegations were not sufficient to support a reasonable inference that the plaintiff's educational experience was "permeated with discriminatory intimidation, ridicule, and insult."  Id. at 590 (quoting Harris, Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)) (citation and internal quotation marks omitted).  Significantly, the expression of concern and support for the victims of sexual assault or harassment by a school district or a Title IX investigator is not evidence of gender bias.  See Washington Univ., 434 F.Supp.3d at 755; see also Doe v. Loh, 2018 WL 1535495, at *10 (D. Md. 2018), aff'd, 767 F. App'x 489 (4th Cir. 2019); Sahm, 110 F.Supp.3d at 778.

[¶22]   For his Title IX claim, including his claim for hostile environment, Plaintiff alleged he was falsely accused of sexually harassing S.B. and that the School District continued to investigate Plaintiff for a Title IX violations, and found him guilty of said violation, against the weight of the evidence.  ECF 1, ¶¶ 56-58.  Plaintiff did not plead he was subjected to less favorable treatment than female students who faced code of conduct violations, nor was it allege members of Plaintiff's gender were exposed to more disadvantageous terms regarding code of conduct violations than compared to female students.  See Salau, 139 F.Supp.3d at 1000.  Likewise, Plaintiff does not plead facts that show the School District imposed less favorable treatment on males, rather he relies on the alleged treatment he received during a singular Title IX investigation.  Id.  Stated another way, Plaintiff alleges only that he experienced disadvantageous treatment in his particular

Title IX investigation and disciplinary proceedings. Such allegations fail to sufficiently plead a hostile environment claim. As such, the School Defendants are entitled to dismissal of Plaintiff's complaint of a hostile environment based on the Title IX investigation.

      C.    <u>Plaintiff's Complaint of Selective Enforcement Related to the Title IX Investigation Must Be Dismissed for Failure to State a Claim.</u>

**[¶23]**   Assuming Plaintiff's Title IX claim is premised on selective enforcement, such a claim required Plaintiff to assert that even if he violated a School District policy, the decision to initiate disciplinary proceedings or the severity of the penalty imposed following an investigation was motivated by gender bias. <u>Rossley v. Drake Univ.</u>, 342 F.Supp.3d 904, 931 (S.D. Iowa 2018), <u>aff'd</u>, 979 F.3d 1184 (8th Cir. 2020) (<u>citing</u> <u>Yusuf</u>, 35 F.3d at 715); <u>see also</u> <u>Marshall v. Ohio Univ.</u>, 2015 WL 7254213, at *6 (S.D. Ohio 2015). Stated another way, to allege a plausible claim of "selective enforcement," pursuant to Title IX, "requires a male plaintiff to allege that 'he received disparate punishment as compared to a similarly-situated comparator' and that such punishment 'was motivated by his [sex].'" <u>Rowles</u>, 983 F.3d at 360 (<u>quoting</u> <u>Gentry v. Mountain Home Sch. Dist.</u>, 2018 WL 2145011, at *6 (W.D. Ark. 2018)).

**[¶24]**   Therefore, a claim of selective enforcement can only survive a motion to dismiss if Plaintiff alleges "a female was in circumstances sufficiently similar to [his] own and was treated more favorably" by the School District. <u>Rossley</u>, 342 F.Supp.3d at 931; <u>see also</u> <u>Plummer v. Univ. of Houston</u>, 860 F.3d 767, 778 (5th Cir. 2017) (plaintiffs failed to assert a selective enforcement claim because "during the discipline process they—a male and a female—were treated equally"); <u>Stenzel v. Peterson</u>, 2017 WL 4081897, *4-5 (D. Minn. 2017) (a male plaintiff's selective enforcement claim failed because he could not show he and the female complainant were similarly situated). An accused student, here Plaintiff, and his accuser, here S.B., can only be compared to each other to show selective enforcement if the parties have alleged misconduct against each other. <u>Rossley</u>,

342 F.Supp.3d at 933 (citing Stenzel, 2017 WL 4081897, at *5-6).  "[I]f the accused student did not similarly initiate or attempt to initiate a complaint against his or her accuser, the two cannot be compared."  Id.

**[¶25]**   Although Plaintiff makes conclusory allegations in the complaint to allege a Title IX claim, he fails to allege facts to demonstrate the School District targets male students who violate Title IX, but not female violators.  Marshall, 2015 WL 7254213, at *8.  This, again, is fatal to any Title IX claim of selective enforcement which required an allegation Plaintiff received "disparate punishment as compared to a similarly-situated comparator," and that the punishment was motivated by his sex.  Rowles, 983 F.3d at 360.  The complaint fails to contain an allegation related to a "similarly-situated comparator," rather, at best, the complaint contains allegations S.B., the purported victim of the acts, was treated more favorably than Plaintiff, the purported perpetrator, during the investigation.  ECF 1, ¶¶ 28-50.  "[A]llegations regarding the [School District's] treatment of [Plaintiff's] accuser do not support his claim that a female in similar circumstances— i.e., a female accused of sexual harassment or stalking—was treated more favorably."  Rowles, 983 F.3d at 360.  As such, the School Defendants are entitled to dismissal of Plaintiff's complaint of selective enforcement related to the Title IX investigation and discipline.

     D.       <u>Plaintiff's Complaint of Deliberate Indifference in the Course of the Title IX Investigation Must Be Dismissed for Failure to State a Claim.</u>

**[¶26]**   Assuming Plaintiff's Title IX claim is one premised on deliberate indifference in the course of the investigation, such a claim requires plausible allegations "an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to," the sexual harassment.  Doe v. The Trustees of the Univ. of Pennsylvania, 270 F.Supp.3d 799, 825 (E.D. Pa. 2017) (citing Gebser, 524 U.S. at 277; Bostic v. Smyrna Sch. Dist., 418 F.3d 355 (3d Cir. 2005); Mallory v. Ohio University, 76 Fed.Appx. 634 (6th Cir. 2003)).  Stated another

way, for Plaintiff to sufficiently "allege a Title IX claim based on [the School District's] disciplinary proceeding under . . . [a] deliberate indifference theory, [Plaintiff] must plausibly allege circumstances suggesting gender bias motivated [the School District's] disciplinary proceeding.  Univ. of St. Thomas, 240 F.Supp.3d at 990 (citing Doe v. Univ. of the South, 687 F.Supp.2d 744, 757–58 (E.D. Tenn. 2009)).  The deliberate indifference theory of liability, pursuant to Title IX, is a "far-less common" theory of liability as it seeks to hold "an institution liable for sexual harassment." Univ. of Pennsylvania, 270 F.Supp.3d at 822, 825.

**[¶27]**  While a deliberate indifferent theory of liability has been recognized, it has been viewed with significant skepticism.  As explained, there is "expressed skepticism that the standard could also be applied to determine 'when intentional discrimination has occurred in a case where a student has relied on Title IX to challenge either the initiation or the outcome of a disciplinary proceeding.'" Id. at 825 (quoting Mallory, 76 Fed.Appx. at 638-39); see also Doe v. Baum, 227 F.Supp.3d 784, 820 (E.D. Mich. 2017) (skepticism exists that the Title IX deliberate indifference standard can be applied to a plaintiff who alleges discriminatory based on allegations the school metered out unlawfully discriminatory discipline) (citations omitted); Doe v. Brown Univ., 166 F.Supp.3d 177, 191 (D.R.I. 2016) (deliberate indifference is alleged when a school ignores a victim's complaint of sexual harassment); Univ. of the South, 687 F.Supp.2d at 757–58 (deliberate indifference claim dismissed because the complaint did not allege university's actions constituted sexual harassment).  This expressed skepticism is recognized within the Eighth Circuit.  See Univ. of St. Thomas, 240 F.Supp.3d at 990, fn. 2 ("it is an open question whether the Title IX deliberate indifference standard applies to claims related to alleged gender discrimination in a university's disciplinary proceedings").

[¶28]   Assuming such a deliberate indifference-based claim can even exist with regard to a Title IX investigation of a purported Title IX perpetrator, Plaintiff was required to allege the School District's response, or lack thereof, to known harassment was clearly unreasonable in light of the known circumstances.  Brown Univ., 166 F.Supp.3d at 190–91 (citing Patterson v. Hudson Area Schs., 551 F.3d 438, 446 (6th Cir.2009); Univ. of the South, 687 F.Supp.2d at 757).  Significantly, the deliberate indifference must, at a minimum, have caused Plaintiff to undergo harassment, or at a minimum make him vulnerable to harassment, and the School District's discriminatory act must be "so severe, pervasive, and objectively offensive that it can be said to deprive [Plaintiff] of access to the educational opportunities or benefits provided by the [School District]."  Doe v. Trustees of Bos. Coll., 892 F.3d 67, 93 (1st Cir. 2018) (citing Davis, 526 U.S. at 645; Porto v. Town of Tewksbury, 488 F.3d 67, 72 (1st Cir. 2007)).  Plaintiff's complaint fails to recognize a Title IX claim of deliberate indifference is a very high standard of misconduct.  Plummer, 860 F.3d at 778.

[¶29]   Plaintiff's deliberate indifference claim faces a significant hurdle because, as already noted, "[i]t is undecided whether [the deliberate indifference] theory reaches disciplinary proceedings." Washington Univ., 434 F.Supp.3d at 756; see also Univ. of Pennsylvania, 270 F.Supp.3d at 825; Baum, 227 F.Supp.3d at 820; Brown Univ., 166 F.Supp.3d at 191; Univ. of the South, 687 F.Supp.2d at 757-58.  As recognized by the Sixth Circuit, a deliberate indifference claim is not conducive to challenge a disciplinary proceeding because the misconduct complained of must be sexual harassment.  Doe v. Baum, 903 F.3d 575, 588 (6th Cir. 2018); see also Washington Univ., 434 F.Supp.3d at 756.  Yet, Plaintiff fails to assert he was subject to sexual harassment, rather he was found to have committed the sexual harassment.  See ECF 1, ¶¶ 29, 56.

[¶30]   A review of Plaintiff's complaint reveals the allegations are insufficient to support a plausible claim for relief pursuant to deliberate indifferent because many, if not all, of Plaintiff's

allegations fail to assert he was subject to sexual harassment.  See Univ. of St. Thomas, 240 F.Supp.3d at 991; see also Baum, 903 F.3d at 588 ("Because [plaintiff] did not allege that actionable sexual harassment occurred during his disciplinary proceedings, he failed to state a claim under Title IX by way of deliberate indifference").  At best, Plaintiff alleged dissatisfaction with the disciplinary process and outcome of the School District's disciplinary proceedings which does not establish or even indicate deliberate indifference.  ECF 1, ¶ 56; see Saravanan v. Drexel Univ., 2017 WL 4532243, at *8 (E.D. Pa. 2017).  As such, the School District is entitled to dismissal of Plaintiff's Title IX deliberate indifferent claim.

E.  Plaintiff's Complaint of Retaliation in the Title IX Investigation Must Be Dismissed for Failure to State a Claim.

**[¶31]**  Assuming Plaintiff's Title IX claim is based on retaliation, such a claim requires plausible allegations that he (1) engaged in a protected activity; (2) the federally funded recipient took an adverse action against the plaintiff; and (3) the adverse action was causally linked to the protected activity.  Clausen v. Nat'l Geographic Soc., 664 F.Supp.2d 1038, 1048 (D.N.D. 2009), aff'd sub nom. Clausen v. Nat'l Geographic Soc'y, 378 F. App'x 595 (8th Cir. 2010) (citing Thorn v. Amalgamated Transit Union, 305 F.3d 826, 831 (8th Cir.2002)).  "Unlike other anti-discrimination statutes, Title IX does not expressly provide a right of action for retaliation."  Du Bois v. Bd. of Regents of Univ. of Minnesota, 987 F.3d 1199, 1203 (8th Cir. 2021).  Rather, the Supreme Court of the United States held Title IX contains an implied a right of action for retaliation to allow individual to enforce Title IX's prohibition of intentional discrimination.  Jackson v. Birmingham Board of Education, 544 U.S. 167, 173 (2005).  The Supreme Court reasoned a claim for retaliation is implied in Title IX because retaliation is "an intentional response" to a complaint of alleged sex discrimination."  Id. at 174.  Therefore, "when a funding recipient retaliates against a person

because [the individual] complains of sex discrimination, this constitutes intentional discrimination on the basis of sex, in violation of Title IX."  Id.

**[¶32]**  Here, Plaintiff "cannot meet the first element of a Title IX retaliation claim" because "Jackson makes clear that Title IX retaliation claims must arise from a protected activity, like complaining of sex discrimination."  Id. ("[Retaliation] is an intentional response to the nature of the complaint: an allegation of sex discrimination.").  In Du Bois v. Bd. of Regents of Univ. of Minnesota, 987 F.3d 1199 (8th Cir. 2021), the Eighth Circuit Court of Appeals affirmed the dismissal of a plaintiff's Title IX retaliation claim because the plaintiff "never complained of sex discrimination," nor did the plaintiff "oppos[e] a violation of Title IX," rather the plaintiff "contend[ed] . . . no violation of Title IX had occurred."  Du Bois, 987 F.3d at 1204.  The Du Bois decision determined "because Jackson held that a Title IX retaliation claim arises when a plaintiff is harmed from complaining of sex discrimination, [the plaintiff] did not engage in protected activity under Title IX" by denying a Title IX violation occurred.  Id.  Here, Plaintiff's retaliation claim fails as a matter of law because he did not engage in protected activity under Title IX for which he was retaliated—put another way, nowhere does Plaintiff contend he complained of being subject to sexual harassment and such complaint resulted in Plaintiff being subject to retaliation. As such, the School District is entitled to dismissal of Plaintiff's Title IX retaliation claim.

    F.    <u>Plaintiff's Title IX Claim Must be Dismissed Because the Alleged Damages Are for Emotional and Psychological Harm Which are Precluded by Cummings v. Premier Rehab Keller, P.L.L.C., --- U.S. ---, 142 S. Ct. 1562 (2022).</u>

**[¶33]**  The sole and exclusive damages Plaintiff alleges to have suffered under his Title IX claim are emotional and psychological harm.  ECF 1, ¶ 60.  The Supreme Court of the United States has recently held such damages are unavailable and cannot be recovered for Title IX violations. Cummings v. Premier Rehab Keller, P.L.L.C., --- U.S. ---, 142 S. Ct. 1562, 1569-76 (2022) (emotional distress damages are not recoverable under the Spending Clause's antidiscrimination

statues and therefore are not recoverable under Title IX). The <u>Cummings</u> opinion reasoned, the implied right of action found in Title IX "operates based on consent: 'in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'" <u>Id.</u> at 1570 (<u>quoting</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 451 U.S. 1, 16 (1981)). As a result, The Supreme Court "regularly appl[y] [a] contract-law analogy in cases defining the scope of conduct for which funding recipients may be held liable for money damages." <u>Id.</u> (<u>quoting</u> <u>Barnes v. Gorman</u>, 536 U.S. 181, 186 (2002)). As a result, the <u>Cummings</u> opinion held emotional distress damages are not compensable under Title IX because federal funding recipients, like the School District here, cannot be treated as "having consented to [being] subject to damages for emotional distress." <u>Id.</u> at 1572.

**[¶34]**   Since this ruling, numerous courts have denied claims for damages based on emotional and psychological harm—which is the sole damages Plaintiff seeks to recover under his Title IX claims. <u>See</u> <u>A.T. v. Oley Valley Sch. Dist.</u>, 2023 WL 1453143 (E.D. Pa. 2023) (district court held dismissal of plaintiff's claims for compensatory emotional distress damages brought under Title IX warranted); <u>Doe v. Fairfax Cnty. Sch. Bd.</u>, 2023 WL 424265 (E.D. Va. 2023) (same); <u>Doe v. Moravian Coll.</u>, 2023 WL 144436 (E.D. Pa. 2023) (same); <u>Richard Roe W.M. v. Devereaux Found.</u>, 2023 WL 173918 (E.D. Pa. 2023) (same); <u>Bonnewitz v. Baylor Univ.</u>, 2022 WL 2688399 (W.D. Tex. 2022) (same); <u>Doe v. Bd. Of Regents of the Univ. of Neb.</u>, 2022 WL 3566990 (D. Neb. 2022) (same); <u>Doe v. City of Pawtucket</u>, 2022 WL 4551953 (D.R.I. 2022) (same); <u>Doe v. Curators of the Univ. of Mo.</u>, 2022 WL 3366765 (W.D. Mo. 2022) (same); <u>Doe v. Duefahrd</u>, 2022 WL 17253080 (N.D. Ind. 2022) (same); <u>Doe v. Purdue University</u>, 2022 WL 3279234 (N.D. Ind. 2022) (same); <u>Doe v. Sch. Bd. Of Palm Beach Cty.</u>, 2022 WL 17988203 (S.D. Fla 2022) (same); <u>J.C. v. Bd. Of Regents of the Univ. Sys. Of Ga.</u>, 2022 WL 4331768 (N.D. GA. 2022) (same); <u>K.G.</u>

v. Woodford Cnty. Bd. Of Educ., 2022 WL 17993127 (E.D. Ky. 2022) (same); Unknown Party v.

Ariz. Bd. Of Regents, 2022 WL 17459745 (D. Ariz. 2022) (same).

**[¶35]**   Asa result, Plaintiff's claim for Title IX must be dismissed because the only damages he

seeks, being related to emotional and psychological harm, are unrecoverable, and therefore this

claim fails as a matter of law, and the School Defendants are entitled to dismissal of Plaintiff's

Title IX claim, in total.

## IV.    The School Defendants Are Entitle to Dismissal of Plaintiff's 42 U.S.C. § 1983 Official Capacity Claims Against Kenmare Public School and Alex Hennix Pursuant.

### A.    Plaintiff's Official Capacity Claims Fail as a Matter of Law for Failure to Allege an Unconstitutional Policy or Custom.

**[¶36]**   Plaintiff asserts official capacity claims against the School District and Hennix under

Count Two (First Amendment) and Count Three (Fourteenth Amendment).  ECF 1, ¶¶ 61-73.  A

suit against an employee of a political subdivision, like the School District, in that employee's

official capacity is the same as a suit against the political subdivision itself.  Brandon v. Holt, 469

U.S. 464, 471-72 (1985).  Therefore, Plaintiff's 42 U.S.C. § 1983 claims against Hennix, in her

official capacity, are the same as if they had been brought solely against the School District.

However, missing from the complaint is an allegation of an unconstitutional "policy or custom."

ECF 1; see also Grayson v. Ross, 454 F.3d 802, 810–11 (8th Cir. 2006) ("Official-capacity liability

under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by a 'government's

policy or custom . . . .'") (quoting Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694

(1978)).  No allegation of an unconstitutional policy or custom means no liability.  See Smith v.

Hutchinson, 2023 WL 2292273, at *1 (8th Cir. 2023).

**[¶37]**   A "policy" is made when "'a decision maker possess[ing] final authority to establish

municipal policy with respect to the action' issues an official proclamation, policy, or edict."

Cannon v. City of Philadelphia, 86 F.Supp.2d 460, 471, n.16 (E.D.Pa. 2000).  "A 'policy' is an

official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). A policy is not inferred merely because harm resulted from some interaction with a governmental entity. Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993).

[¶38]   To properly allege an official capacity claim against the School Defendants, Plaintiff must prove the alleged constitutional violation was caused by the implementation or execution of an unconstitutional municipal policy – put another way, the policy must be the moving force behind the constitutional violation. Hafer v. Melo, 502 U.S. 21, 25 (1991); Monell, 436 U.S. at 694; Mettler, 165 F.3d at 1204. Therefore, municipal liability exists only if an action or policy itself violated federal law, or if the action or policy was lawful on its face but "led an employee to violate a plaintiff's rights [and] was taken with 'deliberate indifference' as to its known or obvious consequences." Pietrafeso v. Lawrence Cnty., S.D., 452 F.3d 978, 982 (8th Cir. 2006) (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 407 (1997)).

[¶39]   Here, given Plaintiff failed to allege an unconstitutional policy or custom in the complaint, the official capacity claims against the School District and Hennix under Count Two (First Amendment) and Count Three (Fourteenth Amendment) fail as a matter of law, and must be dismissed, because there can be no liability.

   B.   Plaintiff Cannot Establish "Deliberate Indifference" on Behalf of the School District.

[¶40]   Even assuming, for argument purposes only, the complaint alleged an unconstitutional policy or custom as a basis of liability, the School Defendants would still be entitled to dismissal of the official capacity claims contained in Count Two (First Amendment) and Count Three (Fourteenth Amendment) because Plaintiff cannot meet the deliberate indifference standard necessary to assert such a claim. To bring a successful 42 U.S.C. § 1983 claim against the School District, Plaintiff was required to prove the School District, or Hennix, acted with "deliberate

indifference" to the known or obvious consequences of her actions.  Szabla v. City of Brooklyn Park, Minnesota, 486 F.3d 385, 391 (8th Cir. 2007) (when cases involve a facially lawful policy, the claim is analyzed under a "'deliberate indifference standard" of fault first adopted by [the Eighth Circuit] in Herrera v. Valentine, 653 F.2d 1220, 1224 (8th Cir.1981), and ultimately endorsed by the Supreme Court in City of Canton, Ohio v. Harris, 489 U.S. 378 (1989)").  Since its adoption, the deliberate indifference standard has been consistently applied.  Pietrafeso, 452 F.3d at 982 (liability arises "if an action or policy itself violated federal law, or if the action or policy was lawful on its face but led an employee to violate a plaintiff's rights [and] was taken with 'deliberate indifference' as to its known or obvious consequences") (internal quotation omitted); see also Golberg v. Hennepin Cnty., 417 F.3d 808, 812 (8th Cir. 2005); Sigman v. Town of Chapel Hill, 161 F.3d 782, 788 (4th Cir. 1998); Gonzalez v. Ysleta Indep. Sch. Dist., 996 F.2d 745, 757 (5th Cir.1993); Benhardt v. Bd. of Cnty. Comm'rs of Cnty. of Wyandotte, 9 F.Supp.2d 1252, 1266 (D. Kan. 1998).

**[¶41]**   In Szabla v. City of Brooklyn Park, Minnesota, 486 F.3d 385 (8th Cir. 2007), the deliberate indifference standard was further explained by the Eighth Circuit:

> where an official policy is lawful on its face and does not compel unconstitutional action by an employee of the municipality, the analysis is different. . . .  "[I]f one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985) (plurality opinion). Accordingly, "some limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in Monell [foreclosing respondeat superior liability] will become a dead letter."  Id.

Id. at 390; see also Brown, 520 U.S. at 411 (to avoid a 42 U.S.C. § 1983 claim based upon a single incident from improperly collapsing into a *respondeat superior* theory of liability, deliberate indifference to the risk that the challenged decision would result in a violation of a constitutional or statutory right must be alleged).

[¶42]   Here, as will be further outlined below, Plaintiff failed to allege facts sufficient to state a plausible claim of deliberate indifference related to either his First Amendment claim, or his equal protection claim.  See Section V (First Amendment) and Section VI (Due Process)[7], infra.  With his official capacity claims, Plaintiff is attempting to do exactly what the Supreme Court of the United States cautioned in Brown—basing a 42 U.S.C. § 1983 official capacity claim against the School Defendants on a singular incident which improperly collapses a 42 U.S.C. § 1983 theory of liability into one for respondeat superior liability.  As such, in addition to dismissal for failure to allege a policy or custom, the School Defendants are entitled to dismissal of the alleged official capacity claims based on the preclusion of respondeat superior liability masked as 42 U.S.C. § 1983 claims.

## V.   Plaintiff's Claim Under Count Two for a Violation of the First Amendment Must Be Dismissed for Failure to State a Claim.

[¶43]   In support his First Amendment violation, Plaintiff asserts he engaged in protected conduct when he told S.B., during math class, to remove the gay pride flag from her neck, because he has a constitutionally guaranteed, essential, and well-established right to free speech which protects his ability to raise concerns regarding school policy.  ECF 1, ¶¶ 19, 63-64.  It was not alleged anywhere within the complaint that Plaintiff had any authority to enforce school policy.  Yet, Plaintiff alleges as a result of exercising this alleged right, he was retaliated against by Hennix because S.B. was encouraged to file a frivolous Title IX complaint against Plaintiff and the School District further processed the frivolous violations.  Id. at ¶ 65.  As will be further explained below, Plaintiff's complaint fails to contain sufficient allegations to establish a plausible case for a First Amendment violation.

---

[7] To avoid unnecessary duplication, the School Defendants refer this Court to paragraphs 43-52 and 53-60 which establishes Plaintiff's First Amendment and equal protection claims fail as a matter of law and must be dismissed.

[¶44]   The First Amendment prohibits the federal government and, through the Fourteenth Amendment, the States, from abridging the freedom of speech.  U.S. Const., amend. I; Gitlow v. New York, 268 U.S. 652, 666 (1925); see Sagehorn v. Indep. Sch. Dist. No. 728, 122 F.Supp.3d 842, 852 (D. Minn. 2015).  Generally speaking, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  Ashcroft v. ACLU, 535 U.S. 564, 573 (2002).  It is a bedrock principle of the First Amendment that "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."  Texas v. Johnson, 491 U.S. 397, 414 (1989).

[¶45]   It is well settled, public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."  B.W.A. v. Farmington R-7 Sch. Dist., 508 F.Supp.2d 740, 747 (E.D. Mo. 2007), aff'd, 554 F.3d 734 (8th Cir. 2009) (citing Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969)).  Notwithstanding, the constitutional rights of public school students "are not automatically coextensive with the rights of adults in other settings," because the Constitution does not require "teachers, parents, and elected school officials to surrender control of the American public school system to public school students."  Id. at 747 (quoting Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682, 686 (1986)).  Rather, the expressions of public school students will only "be protected as long as they do not materially and substantially interfere with the requirements of appropriate discipline or collide with the rights of others."  Salau, 139 F.Supp.3d at 1009 (citation omitted).

[¶46]   The "basic educational mission" of the school may at times conflict with the free speech rights of its students.  C.R. v. Eugene Sch. Dist. 4J, 835 F.3d 1142, 1148 (9th Cir. 2016) (quoting Fraser, 478 U.S. at 685).  As such, the First Amendment does not protect all speech in

the school environment, and school officials may lawfully punish some forms of unprotected student speech.  S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012); see also A.S. by & through Schaefer v. Lincoln Cnty. R-III Sch. Dist., 429 F.Supp.3d 659, 669 (E.D. Mo. 2019).  "[C]onduct by the student, in class or out of it, which for any reason – whether it stems from time, place, or type of behavior – materially disrupts classwork or involves substantial disorder or invasion of the rights of others is . . . not immunized by the constitutional guarantee of freedom of speech."  Schaefer, 429 F.Supp.3d at 669 (quoting Tinker, 393 U.S. at 513); see also Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd., 384 F.Supp.3d 598, 609 (E.D. Va. 2019), aff'd, 832 F. App'x 802 (4th Cir. 2020); McKinney as Next Friend of K.P. v. Huntsville Sch. Dist., 350 F.Supp.3d 757, 766 (W.D. Ark. 2018).  "Thus, student speech that causes a substantial disruption is not protected."  Wilson, 696 F.3d at 777.

**[¶47]**   As a result, district courts are required to analyze First Amendment violations alleged by public school students "in light of the special characteristics of the school environment." Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266 (1988); see also B.W.A., 508 F.Supp.2d at 747; Anderson v. Milbank Sch. Dist. 25-4, 197 F.R.D. 682, 686 (D.S.D. 2000) ("a school need not tolerate speech that is inconsistent with its pedagogical mission, even though the government could not suppress that speech outside of the schoolhouse").  To state a First Amendment retaliation claim, a plaintiff must allege the following elements: "(1) that he engaged in a constitutionally protected activity; (2) that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [the plaintiff]'s exercise of his constitutional rights."  Eggenberger v. W. Albany Twp., 820 F.3d 938, 943 (8th Cir. 2016) (quoting Scheffler v. Molin, 743 F.3d 619, 621 (8th Cir. 2014)); see also Rowles, 983 F.3d at 357; Mulla v. Univ. of Minnesota, 2021 WL 603774, at *15 (D. Minn.

2021), aff'd, 2022 WL 570099 (8th Cir. Feb. 2022); Salau, 139 F.Supp.3d at 1008–09.  Thus, under this objective test, "[t]he question is not whether the plaintiff [him]self was deterred, [although] how plaintiff acted might be evidence of what a reasonable person would have done."  Scheffler, 743 F.3d at 621 (quoting Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir.2003)).

[¶48]   According to the Supreme Court of the United States, there are four types of speech a public school may regulate, and even restrict, with each being governed by a specific Supreme Court case.  Morse v. Frederick, 551 U.S. 393 (2007) (speech promoting illegal drug use); Kuhlmeier, 484 U.S. 260 (school-sponsored speech); Fraser, 478 U.S. 675 (vulgar, lewd, obscene, and plainly offensive speech); Tinker, 393 U.S. 503 (speech not otherwise categorized).  Consequently, public schools can prohibit speech which promotes illegal drug use, school-sponsored speech, speech that is vulgar, lewd, obscene, and plainly offensive speech as part of the public school's role to teach students the "fundamental values of habits and manners of civility essential to a democratic society" without the need to undertake the Tinker substantial disruption analysis based on the paramount interest of protecting minors from exposure to this type of speech.  Hardwick v. Heyward, 711 F.3d 426, 435 (4th Cir. 2013) (quoting Fraser, 478 U.S. at 683, 681); see also Morse, 551 U.S. 393; Kuhlmeier, 484 U.S. 260; Tinker, 393 U.S. 503.

[¶49]   To satisfy the substantial disruption basis to allow for regulation of speech, "the disruption to the school environment must be more than a mild distraction or curiosity."  Schaefer, 429 F.Supp.3d at 670.  "A general 'buzz' about the challenged speech does not rise to the level of substantial disruption," and "mere speculation that a disruption may occur is not sufficient to reasonably forecast that the disruption may be substantial."  Id. (citing J.C. ex rel. R.C. v. Beverly Hills Unified Sch. Dist., 711 F.Supp.2d 1094, 1117 (C.D. Cal. 2010)).  However, what is relevant to the substantial disruption analysis is the student's disciplinary history and the reaction by other

students to the challenged speech.  Id. (citing Cuff ex rel. B.C. v. Valley Cent. Sch. Dist., 677 F.3d 109, 113 (2d Cir. 2012)).  Furthermore, a public school student has no constitutional right to talk during class about something unrelated to the curriculum while in the classroom.  Oliver v. Klein Indep. Sch. Dist., 448 F.Supp.3d 673, 700 (S.D. Tex. 2020), aff'd sub nom. Oliver v. Champion, 2021 WL 4987481 (5th Cir. 2021).

**[¶50]**  Plaintiff alleges he engaged in protected speech when, during math class, he told S.B. to remove the gay pride flag from her neck, because he has a constitutionally guaranteed, essential, and well-established right to free speech which protects his ability to raise concerns regarding school policy.  ECF 1, ¶¶ 63-64.  However, as noted, Plaintiff could not have been seeking to raise concerns regarding school policy since the policy relied on in the complaint in support of this position was not enacted until after Plaintiff's alleged conduct.  See Id. at ¶ 25; Decl. of Hennix, ¶ 2, Ex. 1, p. 14; ¶ 3, Ex. 2, p. 15-16.  Rather, Plaintiff's comment during math class, which was heard by other students, to S.B. constituted sexual harassment pursuant to the School District's policy as it concerned sex-oriented harassment under the School District's policy.  See Id. at ¶ 2, Ex. 1, p. 23.  Sexual harassment is not constitutionally protected speech.  R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 389 (1992) ("Where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy"); see also Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 208 (3d Cir. 2001) ("government may constitutionally prohibit speech whose non-expressive qualities promote discrimination").

**[¶51]**  The complaint alleges after math class had started, S.B. walked in late and Plaintiff stated "this is Honker Spirit Day, not gay pride day," before telling another student "S.B. should not be allowed to wear a gay pride flag."  ECF 1, ¶¶ 20-21.  Plaintiff did not allege he was given

permission from the instructor to present his opinion, which constituted sexual harassment, during math class, nor does Plaintiff allege sexual orientation was a topic for discussion, or on the curriculum, for discussion during math class.  ECF 1; see Oliver, 448 F.Supp.3d at 700.  Not recognized by Plaintiff is while his expressions, as a public school student, are generally protected, speech that "materially and substantially interfere[s] with the requirements of appropriate discipline or collide with the rights of others" is not protected.  Salau, 139 F.Supp.3d at 1009 (citation omitted).  The School District has the ability to regulate the conduct of Plaintiff, in class, if it materially "disrupts classwork or involves substantial disorder or invasion of the rights of others."  Schaefer, 429 F.Supp.3d at 669 (quoting Tinker, 393 U.S. at 513); see also Fairfax Cnty. Sch. Bd., 384 F.Supp.3d at 609; McKinney, 350 F.Supp.3d at 766.  To hold otherwise would "surrender control of the [School District] to the public school student" which the law does not require.  See B.W.A., 508 F.Supp.2d at 747 (quoting Fraser, 478 U.S. at 682, 686).

**[¶52]**  Here, Plaintiff's speech constituted sexual harassment of S.B. pursuant to the School District's policy.  See Decl. of Hennix, ¶ 2, Ex. 1, p. 23.  Furthermore, it cannot be plausibly argued that the math class curriculum concerned issues surrounding sexual orientation.  As such, Plaintiff's speech is not protected by the First Amendment as it "materially and substantially" interfered with the requirements of appropriate discipline and collides with the rights of S.B. to be free from sexual harassment and collided with the math course curriculum that was being taught that day.  Salau, 139 F.Supp.3d at 1009 (citation omitted).  It is clear, the conduct of Plaintiff, in class, was disruptive and invaded the rights of S.B.  Schaefer, 429 F.Supp.3d at 669; Oliver, 448 F.Supp.3d at 700.  Therefore, the Plaintiff's claim which alleges a violation of his First Amendment rights fails as a matter of law and must be dismissed in total and with prejudice.

## VI.   Plaintiff's Claim Under Count Three for a Violation of the Fourteenth Amendment Must Be Dismissed for Failure to State a Claim.

[¶53]   "The Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  Plaintiff asserts the School District violated his equal protection to be free from gender discrimination and retaliation based on the following allegations:

> ➢ Plaintiff was falsely accused of a Title IX violation;
> ➢ The School District had direct knowledge that no sexual harassment occurred;
> ➢ Plaintiff was retaliated against by Hennix when he did not admit to sexually harassing S.B. and Hennix aided S.B. in filing a frivolous Title IX complaint; and,
> ➢ The School District did not provide Plaintiff with an explanation or important governmental objective that would justify the discrimination.

ECF 1, ¶¶ 70-73.  The Eighth Circuit Court of Appeals has "held intentional gender discrimination" may "violate[] the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983." Ottman v. City of Indep., Mo., 341 F.3d 751, 756 (8th Cir. 2003).  Further, "[t]he right to be free of gender discrimination is clearly established." Wright v. Rolette Cty., 417 F.3d 879, 886 (8th Cir. 2005) (internal quotation marks and citation omitted).

[¶54]   "In general, the Equal Protection Clause requires that state actors treat similarly situated people alike." Habhab v. Hon, 536 F.3d 963, 967 (8th Cir.2008) (quoting Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir.2000)); see also Am. Family Ins. v. City of Minneapolis, 836 F.3d 918, 921 (8th Cir. 2016).  "State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause." Habhab, 536 F.3d at 967 (quoting Bogren, 236 F.3d at 408); see also Am. Family Ins., 836 F.3d at 921.  In addition, "[a] plaintiff stating a . . . claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show [the violation] was the result of municipal custom,

policy, or practice." <u>Fitzgerald v. Barnstable Sch. Comm.</u>, 555 U.S. 246, 257–58 (2009) (<u>citing</u> <u>Monell</u>, 436 U.S. at 694).

**[¶55]**   "To establish a gender-based claim under the Equal Protection Clause, [plaintiff] must, as a threshold matter, demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [plaintiff] belong[s] to a particular protected class." <u>Keevan v. Smith</u>, 100 F.3d 644, 647–48 (8th Cir.1996).   However, courts recognize treating similarly situated people differently is "not a denial of equal protection unless" the plaintiff can establish "an element of intentional or purposeful discrimination."   <u>Batra v. Bd. of Regents of Univ. of Neb.</u>, 79 F.3d 717, 721 (8th Cir. 1996) (<u>quoting</u> <u>Snowden v. Hughes</u>, 321 U.S. 1, 8 (1944)); <u>see also</u> <u>Robbins v. Becker</u>, 794 F.3d 988, 995 (8th Cir. 2015) ("The good faith of [state] officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party") (alteration in original).

**[¶56]**   Therefore, to state an actionable equal protection claim, Plaintiff must have alleged "as a threshold matter," the School District and Hennix "treated [Plaintiff] less favorable than similarly-situated [students] on account of [his]" gender.   <u>Bogren</u>, 236 F.3d at 408; <u>see also</u> <u>Doe v. Bd. of Regents of Univ. of Nebraska</u>, 509 F.Supp.3d 1133, 1143 (D. Neb. 2020).   Significantly, the "[a]lleged comparators must be 'similarly situated in all relevant aspects.'"   <u>Regents of the Univ. of Minnesota</u>, 999 F.3d at 580 (<u>quoting</u> <u>Barber v. C1 Truck Driver Training, LLC</u>, 656 F.3d 782, 797 (8th Cir. 2011)).   "In a case of alleged discriminatory discipline, such as this, the [plaintiff] must [plausibly plead] that the acts of other[s] . . . who were not disciplined or were disciplined less severely were of 'comparable seriousness' to [his] infraction."   <u>Russell v. City of Kan. City</u>, 414 F.3d 863, 868 (8th Cir. 2005) (citation omitted).

[¶57]   Here, Plaintiff failed to allege he was treated differently from other similarly situated individuals.  ECF 1, ¶¶ 67-73.  Rather, Plaintiff alleged he "was retaliated against by Defendant Hennix when he did not admit to sexually harassing S.B."  Id. at ¶ 72.  However, there exists "no clearly established right . . . under the equal protection clause to be free from retaliation."  Burton v. Arkansas Sec'y of State, 737 F.3d 1219, 1237 (8th Cir. 2013) (quoting Ratliff v. DeKalb Cnty., Ga., 62 F.3d 338, 339 (11th Cir. 1995)); see also Tyler v. Univ. of Arkansas Bd. of Trustees, 628 F.3d 980, 986 (8th Cir. 2011) (the Eighth Circuit only recognizes that "§ 1983 provides a vehicle for redressing claims of retaliation on the basis of the First Amendment").  Because there is no established right to be free from retaliation under the equal protection clause, the School Defendants are entitled to dismissal of the Plaintiff's equal protection claim.  Burton, 737 F.3d at 1237.

[¶58]   The School Defendants are further entitled to dismissal of Plaintiff's equal protection claim because Plaintiff has alleged no municipal custom, policy, or practice to be the driving motivation for the alleged discrimination.  See Fitzgerald, 555 U.S. at 257–58 (citing Monell, 436 U.S. at 694).  This failure further supports dismissal of Plaintiff's equal protection claim.

 [¶59]  Even if Plaintiff can overcome these shortcomings, which he cannot, the complaint contains no allegations of a comparison between the facts alleged in the complaint to other students, or other similar cases involving the School District which resulted in different outcomes.  ECF 1.  Plaintiff failed to allege how or even that other students, discipline, or cases within the School District compared to the instant action.  See Salau, 139 F.Supp.3d at 1007.  Rather, Plaintiff simply alleges conclusory statements he was discriminated against which are not sufficient to state a plausible claim even under the liberal pleading standards established by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009).

[¶60]   Therefore, Plaintiff's claim which alleges a violation of the equal protection rights guaranteed by the Fourteenth Amendment fails as a matter of law, and must be dismissed in total and with prejudice, because Plaintiff failed to allege a clearly established right.

## VII.   <u>Plaintiff's Claim Under Count Four for a Breach of Contract Must Be Dismissed for Failure to State a Claim.</u>

[¶61]   Plaintiff's complaint asserts a state law breach of contract claim based on the allegation "Defendants actions violated Kenmare's Policy."  ECF 1, ¶ 77.  This claim has no merit.

[¶62]   "Generally, a valid contract requires parties capable of contracting, consent of the parties, a lawful object, and sufficient consideration."  <u>RTS Shearing, LLC v. BNI Coal, Ltd.</u>, 2021 ND 170, ¶ 19, 965 N.W.2d 40 (<u>citing</u> N.D.C.C. § 9-01-02).  Although it does not appear the North Dakota Supreme Court has addressed this question, the weight of authority from jurisdictions throughout the United States holds:

> no contract arises between a public secondary or elementary school and its students as a result of its student handbook, reasoning that the law of contracts—premised on the notion that voluntary agreements should be enforced according to their terms—is an ill fit for the compulsory nature of public education.

<u>Brodeur v. Claremont Sch. Dist.</u>, 626 F.Supp.2d 195, 217–18 (D.N.H. 2009); <u>see also</u> <u>Poland ex rel. Rose v. Nw. Hendricks Sch. Corp.</u>, 2015 WL 5822638, at *4 (S.D. Ind. 2015); <u>T.L. ex rel. Lowry v. Sherwood Charter Sch.</u>, 2014 WL 897123, at *13 (D. Or. 2014), <u>aff'd sub nom.</u> <u>Lowry v. Sherwood Charter Sch.</u>, 691 F. App'x 310 (9th Cir. 2017); <u>Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cnty., Okla.</u>, 960 F.Supp.2d 1254, 1268–69 (N.D. Okla. 2013); <u>Borovac v. Churchill Cnty. Sch. Dist.</u>, 2012 WL 254131, at *3 (D. Nev. 2012); <u>Higginbottom ex rel. Davis v. Keithley</u>, 103 F.Supp.2d 1075, 1080–81 (S.D. Ind. 1999); <u>Achman v. Chisago Lakes Indep. Sch. Dist. No. 2144</u>, 45 F.Supp.2d 664, 670 (D.Minn.1999); <u>Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758</u>, 594 N.W.2d 216, 219–20 (Minn. Ct. App. 1999).  Simply, a student handbook cannot form the basis of an implied contract between a student and a public school district because of a lack of

consideration, among other things, based on the compulsory attendance laws that require the student's attendance.  Sutherlin, 960 F.Supp.2d at 1268–69; see N.D.C.C. ch. 15.1-20 (North Dakota's compulsory attendance laws).

**[¶63]**   Here, Plaintiff has made no effort to show how the School District student handbook meets the legal requirements for an implied contract—including sufficient consideration on the part of Plaintiff.  See RTS Shearing, 2021 ND 170, ¶ 19 (citing N.D.C.C. § 9-01-02); Brodeur, 626 F.Supp.2d at 216.  Therefore, Plaintiff's claim which alleges a breach of contract fails as a matter of law and must be dismissed in total and with prejudice.

## VIII.   Plaintiff's Claim Under Count Five for Negligent Infliction of Emotional Distress Must Be Dismissed for Failure to State a Claim.

**[¶64]**   For a claim of negligent infliction of emotional distress, a "plaintiff claiming negligent infliction of emotional distress must show 'bodily harm.'"  Hysjulien v. Hill Top Home of Comfort, Inc., 2013 ND 38, ¶ 44, 827 N.W.2d 533 (quoting Hougum v. Valley Mem'l Homes, 1998 ND 24, ¶ 29, 574 N.W.2d 812); see also Restatement (Second) of Torts § 436A (1965) ("If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.").  Here, Plaintiff asserts he has suffered from negligent infliction of emotional distress based on the following allegations:

> ➢ The School Defendants caused Plaintiff to be subject to a hostile learning environment through discrimination and retaliation;
> ➢ The School Defendants knew, or should have know, that their actions would be injurious to Plaintiff;
> ➢ The School Defendants knew, or should have know, that their actions violated the School District's policy; and,
> ➢ Plaintiff has been damaged financially and emotionally.

ECF 1, ¶¶ 80-84.  Nowhere in the complaint is bodily harm alleged.  ECF 1.

**[¶65]**   "The bodily harm essential to sustain a claim for relief for negligent infliction of emotional distress is defined in Restatement 2d Torts § 15 (1965) as 'any physical impairment of the condition of another's body, or physical pain or illness.'"  Hysjulien, 2013 ND 38, ¶ 44 (quoting Muchow v. Lindblad, 435 N.W.2d 918, 921 (N.D. 1989)).  "Bodily harm may be caused not only by impact or trauma, but also by emotional stress."  Id.  However, the North Dakota Supreme Court has made clear "transitory phenomena" are insufficient to satisfy the requirement of bodily harm:

> The rule stated in this Section [Restatement (Second) Torts § 436A (1965) ] applies to all forms of emotional disturbance, including temporary fright, nervous shock, nausea, grief, rage, and humiliation.  The fact that these are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm.  On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character.  This becomes a medical or psychiatric problem, rather than one of law.

Hougum, 1998 ND 24, ¶ 29 (quoting Muchow, 435 N.W.2d at 921; Restatement (Second) Torts § 436A cmt. c (1965)).

**[¶66]**   Here, the allegations contained in the complaint fail to raise a reasonable inference of the requisite "bodily harm" necessary to sufficiently plead a claim for negligent infliction of emotional distress.  Hysjulien, 2013 ND 38, ¶ 45.  This failure to allege the necessary bodily harm is fatal to Count Five—Negligent Infliction of Emotional Distress and the School Defendants are entitled to dismissal of this claim, in total and with prejudice, as a matter of law.

## CONCLUSION

**[¶67]**   For the above noted reasons, and based upon the records on file with the Court, the School Defendants respectfully request this Court dismiss the complaint by Plaintiff Allen Redding on

behalf of minor son D.R. against Defendants Kenmare Public School, through its Board of Education, and Alex Hennix for failure to state a claim upon which relief can be granted.

**[¶68]**   **DATED** this 20th day of April, 2023.

**PEARSON CHRISTENSEN, PLLP**

/s/ Daniel L. Gaustad
**DANIEL L. GAUSTAD** (ND ID #05282)
**JOSEPH E. QUINN** (ND ID #06538)
24 North 4th Street
Grand Forks, ND  58203
Phone: (701) 775-0521; Fax: (701) 775-0524
dan@grandforkslaw.com
Attorneys for Kenmare Public School, through its
Board of Education, and Alex Hennix
