# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| ALLEN REDDING on behalf of minor son D.R., | CASE NO. 1:23-cv-00025-CRH |
| *Plaintiff,* | |
| v. | |
| KENMARE PUBLIC SCHOOL, *et al.,* | |
| *Defendants.* | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

STANDARD OF REVIEW .................................................................1

   I.   Fed. R. Civ. P 12(b)(6) ...........................................................1

   II.  Title IX Standard ..................................................................2

ARGUMENT ...................................................................................3

   III.    Violation of Title IX ..........................................................3

      A.  Erroneous Outcome of Title IX.........................................4

      B.  Hostile Environment of Title IX .......................................7

      C.  Selective Enforcement of Title IX .....................................7

      D.  Deliberate Indifference under Title IX................................9

      E.  Retaliation under Title IX...............................................11

      F.  Title IX Damages .........................................................12

   IV.    §1983 Official Capacity Claims.........................................12

   V.  First Amendment Claims......................................................14

   VI.    Fourteenth Amendment Claims .........................................17

   VII.   Breach of Contract Claims ...............................................18

   VIII.  Negligent Infliction of Emotional Distress Claims ...................19

   IX.    Evidence Provided by Plaintiff .........................................21

CONCLUSION...............................................................................21

CERTIFICATE OF COMPLIANCE ........................................................................22

CERTIFICATE OF SERVICE ................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.S. v. Lincoln Cty. R-III Sch. Dist*., 429 F. Supp. 3d 659, 673 (E.D. Mo. 2019)...13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).....................................................................2

*Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007)...................................1, 2

*Brown v. Board of Educ*., 347 U.S. 483, 493, 74 S. Ct. 686, 98 L. Ed. 873 (1954)13

*Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1069 (8th Cir. 2017) ...............12

*Cannon v. University of Chicago*, 441 U.S. 677, 688-89, 60 L. Ed. 2d 560, 99 S.

   Ct. 1946 (1979) ....................................................................................................12

*Conley v. Gibson*, 355 U.S. 41 (1957) .....................................................................1

*Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 650, 119 S. Ct. 1661, 143 L.

   Ed. 2d 839 (1999) ............................................................... 2, 3, 10, 14

*Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 957 (N.D. Ill. 2017)...........8

*Doe v. Miami Univ*., 882 F.3d 579 (6th Cir. 2018)....................................................7

*Doe v. Trs. of the Univ. of Pa.,* 270 F. Supp. 3d 799 (E.D. Pa. 2017)............. 10, 13

*Doe v. Trustees of Bos. Coll.,* 892 F.3d 67, 93 (1st Cir. 2018)........................ 10, 14

*Doe v. Wash. Univ*., 434 F. Supp. 3d 735, 753 (E.D. Mo. 2020) ................... passim

*Engele v. Independent Sch. Dist*. No. 91, 846 F. Supp. 760, 765 (D. Minn. 1994) 13

*Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 71-73, 117 L. Ed. 2d

   208, 112 S. Ct. 1028 (1992)................................................................................12

iii

*Goss v. Lopez*, 419 U.S. 565, 576, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) ............13

*Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)

.....................................................................................................................15

*Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) ........................18

*Hougum v. Valley Memorial Homes*, 1998 ND 24, 574 N.W.2d 812 (1998) .........20

*Hysjulien v. Hill Top Home of Comfort, Inc.*, 2013 ND 38, ¶ 44, 827 N.W.2d 533,

549-50 (2013)..........................................................................................20

*Ikpeazu v. University of Nebraska*, 775 F.2d 250, 253 (8th Cir. 1985)..................19

*Jackson v. Birmingham Board of Education*, 544 U.S. 167, 173, 125 S. Ct. 1497,

161 L. Ed. 2d 361 (2005) ..................................................................11

*K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058-59 (8th Cir. 2017) ..................3

*Laney v. City of St. Louis*, 56 F.4th 1153, 1157 (8th Cir. 2023)..............................15

*Maher v. Iowa State Univ.*, 915 F.3d 1210, 1213 (8th Cir. 2019)............................3

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018,

56 L. Ed. 2d 611 (1978) ....................................................................18

*Muchow v. Lindblad*, 435 N.W.2d 918, 923-25 (N.D. 1989)..................................20

*Pearson v. Logan Univ.*, 937 F.3d 1119, 1125 (8th Cir. 2019) ...............................3

*S. J. W. v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771 (8th Cir. 2012)...................17

*Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014)............................................15

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 89 S. Ct. 733 (1969)

...............................................................................................................17

*West v. Atkins*, 487 U.S. 42, 48-51, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).......17

*Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015)............9

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)............................................8

**Statutes**

20 U.S.C. § 1681(a) ...................................................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................1

Plaintiff, Allen Redding on behalf of D.R., by and through their attorney, The Law Office of Keith Altman, respectfully requests that the Court Deny Defendants' Motion to Dismiss for the reasons set forth herein.

## STANDARD OF REVIEW

### I.    Fed. R. Civ. P 12(b)(6)

Rule 12 (b)(6) provides that parties may assert by motion a defense based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The Supreme Court has stated that the guidance between Rule 8 and Rule 12(b)(6) are as follows "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41 (1957). The Court further stated in *Bell Atlantic Corporation* that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. In *Ashcroft v. Iqbal*, the Court further expanded on the test stating "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

1

## II.    Title IX Standard

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

The Supreme Court has identified sexual harassment, including student-on-student sexual harassment, as a form of sex discrimination for Title IX purposes. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999). The statute thus affords victims of student-on-student sexual harassment a private right of action for damages against educational institutions that receive federal funding. *Id.* This court treats peer sexual assault as a form of sex discrimination for Title IX purposes. *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058-59 (8th Cir. 2017); *Maher v. Iowa State Univ.*, 915 F.3d 1210, 1213 (8th Cir. 2019).

A plaintiff seeking to prove a Title IX violation in the wake of a peer sexual assault must establish that the institution was: (1) "deliberately indifferent," (2) "to known acts of discrimination," (3) "which occurred under its control." *Pearson v. Logan Univ.*, 937 F.3d 1119, 1125 (8th Cir. 2019). A Title IX plaintiff is also required to show the discrimination was "so severe, pervasive, and objectively

offensive that it can be said to deprive the victim of access to the educational opportunities or benefits provided by the school." *Id.*

## **ARGUMENT**

### **III.    Violation of Title IX**

Title IX was put into place to deter discrimination. Defendants have wrongfully utilized the laws of Title IX to harass, discriminate against and defame Plaintiff. The Plaintiff, a student at Kenmare High School, along with other Kenmare students advised a student to take the flag off that she was wearing around her neck. The flag was not being worn as an article of clothing, but merely as a cape around her neck. No form of sexual harassment occurred during the interaction of the student wearing the flag and the other students, including Plaintiff.

Defendant Hennix spoke with the student wearing the flag in an adjoining classroom prior to the start of class regarding her wearing the flag with encouragement. Defendant Hennix's conversation bled into the time in which Plaintiff's math class had started. Defendant Hennix then sent the student into the classroom, disrupting the start of class. All eyes were on this student as she proceeded to parade herself into the classroom with the flag as a cape. The interaction between the students occurred at this time, after Defendant Hennix and the other student knowingly and intentionally caused the disruption to the class.

Defendant Hennix and the student conspired to cause the disruption to the class. While Plaintiff and other students advised the student to remove the flag, they did not participate in any form of Title IX violation to this student. Following the interaction, the students in the class involved in the interaction were brought down to Defendant Hennix's office and advised to "admit what they had done". If they did not admit to what Defendant Hennix was trying to achieve, then the student wearing the flag would file a Title IX against them. Notably, Plaintiff was unaware of what "a Title IX" was in that moment.

With knowledge that no sexual harassment occurred, Defendant Hennix moved forward with filing Title IX violations against multiple students that were involved in the altercation, as well as some that were not. Defendant Hennix stopped at nothing to bring forth her political ideologies into the school all while harming students that did not engage in any wrongful behavior.

### A.    Erroneous Outcome of Title IX

A plaintiff may assert a claim under Title IX based upon an erroneous outcome theory, in which "the plaintiff attacks the [school] disciplinary proceeding on grounds of gender bias by arguing that the plaintiff was innocent and wrongly found to have committed an offense." *Salau v. Denton*, 139 F. Supp. 3d 988, 998 (W.D. Mo. 2015), quoting *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015). "Plaintiffs who claim that an erroneous outcome was reached must

allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 758 (E.D. Mo. 2020), citing *Yusuf v. Vassar Coll.,* 35 F.3d 709 (2d Cir. 1994).

Stated another way, plaintiff must show: (1) evidence illustrating an "articulable doubt" as to the accuracy of the outcome of the proceeding; and (2) particular circumstances showing gender bias was a motivating factor in the erroneous outcome. *Doe v. Wash. Univ., 434 F. Supp.* 3d 735, 758 (E.D. Mo. 2020). To show an articulable doubt, a plaintiff may point to "particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or . . . particular procedural flaws affecting the proof." *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 758 (E.D. Mo. 2020), citing *Yusuf v. Vassar Coll.,* 35 F.3d 709 (2d Cir. 1994).

No sexual harassment occurred between Plaintiff and S.B. Defendant Hennix persuaded S.B. to act in a way that would get a reaction from Plaintiff and other students in Plaintiff's math class. The students advised S.B. to remove the flag around her neck. At no point did Plaintiff harass S.B. as a result of her perceived sexual orientation. Students are not allowed to adorn a flag at school. Plaintiff merely advised S.B. that she was breaching Kenmare policy. At no time did the Plaintiff attempt to enforce the policy himself by attempting to physically remove the flag from S.B.'s physical person. A mere statement to remove the flag does not constitute

sexual harassment under any theory. Plaintiff was targeted as a male student who was assumed to have sexually harassed a female student against the weight of the evidence. Defendants failed to take into consideration that a male student can make a statement in regard to "taking off" an article that is on a female student's body, which as a cape, without it being a result of sexual harassment. Defendants continued to advise S.B. to move forward with a Title IX complaint against Plaintiff against the weight of the evidence. S.B. was not a victim of sexual harassment. Plaintiff was the victim of gender discrimination resulting in a false Title IX violation.

Defendant Hennix, as the superintendent, had the authority and ability to advise S.B. that no sexual harassment occurred, or in the alternative to participate in the investigation process and clear Plaintiff of any wrongdoing. Defendant Hennix had full knowledge of the situation as it occurred as she encouraged S.B. to wear the flag. Defendants knew or should have known that no sexual harassment occurred. Defendants knew or should have known that Plaintiff was innocent and wrongfully found to have committed the offense. Defendants failed to protect Plaintiff from the erroneous outcome that will be a part of his student record indefinitely and will result in future and continued injury as Plaintiff must declare a Title IX violation on all college and graduate school applications, scholarship application and background checks for future employment.

### B.      Hostile Environment of Title IX

In order assert a Title IX hostile-environment claim, plaintiff must allege that his educational experience was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions" of his educational environment. *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 753 (E.D. Mo. 2020) , citing *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018).

Defendants permitted S.B., a female student, to interfere with Plaintiff's rights when they permitted S.B. to file a frivolous Title IX claim against Plaintiff. Defendant Kenmare is a small school in North Dakota. Plaintiff's graduating class consists of 33 students. Plaintiff was harassed, ridiculed, and assumed guilty by Kenmare faculty and students as a result of Defendants actions. Due to the close-knit environment of Kenmare High School and the frivolous claims filed against Plaintiff, Plaintiff's educations environment was drastically altered. Plaintiff's academic and athletic opportunities and outcomes at Kenmare suffered as a result of Defendants actions.

### C.      Selective Enforcement of Title IX

A selective enforcement claims under Title IX "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 757 (E.D. Mo. 2020), citing *Doe v. Columbia Coll. Chicago*, 299 F.

Supp. 3d 939, 957 (N.D. Ill. 2017) (quoting *Yusuf v. Vassar Coll*., 35 F.3d 709, 715 (2d Cir. 1994).

Defendants intentionally pursued a frivolous Title IX complaint, investigation, and conclusion for a female student against Plaintiff, a male student, when they had actual knowledge that no Title IX violation occurred. Defendant Hennix attempted to coerce Plaintiff into admitting to a violation that he did not commit. When Defendant Hennix could not get Plaintiff to admit to some wrongdoing that did not occur she took it into her own hands to see that Plaintiff as a male was prosecuted and punished.

To support a claim of selective enforcement, a male plaintiff must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University. *Doe v. Wash. Univ.,* 434 F. Supp. 3d 735, 757 (E.D. Mo. 2020) , citing *Xiaolu Peter Yu v. Vassar Coll*., 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015). The male plaintiff must show that the University's actions against the male plaintiff were motivated by his gender and that a similarly situated woman would not have been subjected to the same disciplinary proceedings. *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 757 (E.D. Mo. 2020). To Plaintiff's knowledge, no female students that were in Plaintiff's math class were targeted with a false Title IX violation.

Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students. *Doe v. Wash. Univ*., 434 F. Supp. 3d 735, 755 (E.D. Mo. 2020). While this case law is sound, it does not take into consideration when school official is acting with full knowledge that no sexual harassment occurred and operate from a biased standpoint against a knowingly innocent male student whom they are trying to pin a Title IX violation on. In this case, the Defendants have demonstrated bias against male students.

### D.   Deliberate Indifference under Title IX

The Title IX deliberate indifference standard applies "where a plaintiff seeks to hold an institution liable for sexual harassment and requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 756 (E.D. Mo. 2020), citing *Doe v. Trs. of the Univ. of Pa.,* 270 F. Supp. 3d 799 (E.D. Pa. 2017). A plaintiff must establish that the "the official's response to the alleged gender bias [was] clearly unreasonable in light of the known circumstances." *Id.* "[T]he deliberate indifference must, at a minimum, cause [students] to undergo harassment or make them liable or vulnerable to it." *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 756 (E.D. Mo. 2020), citing *Doe v. Trustees of Bos. Coll.,* 892 F.3d 67, 93 (1st Cir. 2018).

An institution is deliberately indifferent when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 650, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999)

Plaintiff's claims the threshold of deliberate indifference insurmountably. Defendants intentionally pursued a frivolous Title IX complaint, investigation, and conclusion for a female student against Plaintiff, a male student, when they had actual knowledge that no Title IX violation occurred. Defendant Hennix attempted to coerce Plaintiff into admitting to a violation that he did not commit. When Defendant Hennix could not get Plaintiff to admit to some wrongdoing that did not occur she took it into her own hands to see that Plaintiff as a male was prosecuted and punished. Defendant Kenmare is a small school in North Dakota. Plaintiff's graduating class consists of 33 students. Plaintiff was harassed, ridiculed, and assumed guilty by Kenmare faculty and students as a result of Defendants actions. Due to the close-knit environment of Kenmare High School and the frivolous claims filed against Plaintiff, Plaintiff's educations environment was drastically altered. Plaintiff's academic and athletic opportunities and outcomes at Kenmare suffered as a result of Defendants actions.

### E.    Retaliation under Title IX

In *Jackson*, the Supreme Court found that Title IX implied a right of action for retaliation to enforce its prohibition on intentional discrimination, allowing litigants to seek monetary damages for individual violations of Title IX. *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 173, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005). The intentional incrimination of Plaintiff by Defendants, with knowledge of his innocence, cannot be seen as anything other than intentional discrimination.

To establish a prima facie case of retaliation a plaintiff must demonstrate that (1) he engaged in protected conduct; (2) he suffered a materially adverse action; and (3) the adverse act was causally linked to the conduct. *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1069 (8th Cir. 2017). Plaintiff engaged in a protected activity, Plaintiff suffered adverse action and the adverse action was a result of Plaintiff's protected conduct. Plaintiff advised S.B. of her nonadherence to the Kenmare policy regarding flags. When confronted by Defendant Hennix, Plaintiff proclaimed his innocence. As a result of Plaintiff proclaiming his innocence, Defendant Hennix persecuted Plaintiff with a Title IX violation. The frivolous Title IX violation has had a significant adverse effect on Plaintiff's life.  The affects of which will be felt for years to come throughout Plaintiff's educational and employment careers.

### F.      Title IX Damages

Plaintiff has suffered severely as a result of Defendants unlawful actions. Plaintiff seeks both injunctive relief and monetary damages.

Under Title IX, an aggrieved individual has an implied right of action for both injunctive relief and money damages. *Cannon v. University of Chicago*, 441 U.S. 677, 688-89, 60 L. Ed. 2d 560, 99 S. Ct. 1946 (1979). *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 71-73, 117 L. Ed. 2d 208, 112 S. Ct. 1028 (1992).

### IV.     §1983 Official Capacity Claims

The intangible benefits of attending public school have long been recognized and protected by the federal courts." *Engele v. Independent Sch. Dist*. No. 91, 846 F. Supp. 760, 765 (D. Minn. 1994), citing *Brown v. Board of Educ*., 347 U.S. 483, 493, 74 S. Ct. 686, 98 L. Ed. 873 (1954). Because suspension from school "is a serious event in the life of the suspended child, the property interest in educational benefits and the liberty interest in reputation are implicated. *Goss v. Lopez*, 419 U.S. 565, 576, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975), *A.S. v. Lincoln Cty. R-III Sch. Dist*., 429 F. Supp. 3d 659, 673 (E.D. Mo. 2019). The life altering impacts of a Title IX violation on Plaintiff's record would be considered a serious event in the life of a student. Thus, giving rise to Plaintiff's constitutional liberty interest in reputation to be implication in addition to Plaintiff's rights to free speech and equal protection.

The Title IX deliberate indifference standard applies "where a plaintiff seeks to hold an institution liable for sexual harassment and requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 756 (E.D. Mo. 2020), citing *Doe v. Trs. of the Univ. of Pa.,* 270 F. Supp. 3d 799 (E.D. Pa. 2017). A plaintiff must establish that the "the official's response to the alleged gender bias [was] clearly unreasonable in light of the known circumstances." *Id.* "[T]he deliberate indifference must, at a minimum, cause [students] to undergo harassment or make them liable or vulnerable to it." *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 756 (E.D. Mo. 2020), citing *Doe v. Trustees of Bos. Coll.,* 892 F.3d 67, 93 (1st Cir. 2018).

An institution is deliberately indifferent when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 650, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999)

Plaintiff's claims the threshold of deliberate indifference insurmountably. Defendants intentionally pursued a frivolous Title IX complaint, investigation, and conclusion for a female student against Plaintiff, a male student, when they had actual knowledge that no Title IX violation occurred. Defendant Hennix attempted to coerce Plaintiff into admitting to a violation that he did not commit. When

Defendant Hennix could not get Plaintiff to admit to some wrongdoing that did not occur she took it into her own hands to see that Plaintiff as a male was prosecuted and punished. Defendant Kenmare is a small school in North Dakota. Plaintiff's graduating class consists of 33 students. Plaintiff was harassed, ridiculed, and assumed guilty by Kenmare faculty and students as a result of Defendants actions. Due to the close-knit environment of Kenmare High School and the frivolous claims filed against Plaintiff, Plaintiff's educations environment was drastically altered. Plaintiff's academic and athletic opportunities and outcomes at Kenmare suffered as a result of Defendants actions.

## V.   First Amendment Claims

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006), *Laney v. City of St. Louis*, 56 F.4th 1153, 1157 (8th Cir. 2023).

"To prevail on his First Amendment retaliation claim, [Plaintiff] must show (1) that he engaged in a constitutionally protected activity; (2) that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [Plaintiff]'s exercise of his constitutional rights." *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014). "This is an objective test: [t]he question is not whether the

plaintiff [him]self was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done." *Id.*

Plaintiff was halted in exercising his First Amendment rights by Defendants when he was ridiculed and faced a frivolous Title IX complaint as a result of telling S.B. to remove her gay pride flag. The public school system was put into place to educate our children on core educational principles. Students come from all belief systems. Students have a right to their own belief systems. Whether Plaintiff held the same beliefs as S.B. in regard to her gay pride flag is not contested. S.B. did not come into the room and state that she was LGBTQ+ and as such was wearing a gay pride flag. S.B. walked into the room, breaching Kenmare policy and caused a disruption to the teaching of the Kenmare students in Plaintiff's math class. Even if S.B. had come in and stated that she was LGBTQ+ and Plaintiff told her to take off her gay pride flag as it breached Kenmare's policy on flags, Plaintiff would not have committed sexual harassment.

Plaintiff exercised his freedom of speech, a right given by the United States Constitution and so engrained in the landscape of our nations that the right is known by all. Defendants took adverse action against Plaintiff in the frivolous filing of a Title IX complaint and the wrongful outcome of that complaint. The adverse actions were taken against Plaintiff as a result of Plaintiff exercising his freedom. Plaintiff and all students at Kenmare observed the handlings of the Title IX complaint,

investigation, and outcome. Due to the frivolous nature and the wrongful outcome resulting in a permanent Title IX violation being placed on an innocent students record, the repercussions of which will have an effect on the trajectory of Plaintiff's life will naturally cause Plaintiff and others to halt the exercise of their First Amendment rights.

Notably, Plaintiff told S.B. to remove the flag around her neck. Students are not allowed to adorn a flag at school. Plaintiff merely advised S.B. that she was breaching Kenmare policy. At no time did the Plaintiff attempt to enforce the policy himself by attempting to physically remove the flag from S.B.'s physical person.

"[C]onduct by the student, in class or out of it, which for any reason — whether it stems from time, place, or type of behavior — materially disrupts classwork or involves substantial disorder or invasion of the rights of others is . . . not immunized by the constitutional guarantee of freedom of speech." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 89 S. Ct. 733 (1969). "Thus, student speech that causes a substantial disruption is not protected." *S. J. W. v. Lee's Summit R-7 Sch. Dist*., 696 F.3d 771 (8th Cir. 2012). Defendants fail to acknowledge that Plaintiff, and the other students present in the math class, were not the ones that caused a disruption to the learning environment. S.B. with the support and direction of Defendant Hennix walked into the class late causing a scene. Plaintiff did not materially disrupt the classroom of the educational environment of the other

students. At best, the interaction between Plaintiff and S.B. could be seen as a mild distraction, not warranting a limitation of free speech.

## VI.    Fourteenth Amendment Claims

Intentional discrimination violates the Fourteenth Amendment. The Equal Protection Clause reaches only state actors, but § 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities. *West v. Atkins*, 487 U.S. 42, 48-51, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

A plaintiff stating a similar claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

Plaintiff was targeted as a male student who was assumed to have sexually harassed a female student against the weight of the evidence. Defendants failed to take into consideration that a male student can make a statement in regard to "taking off" an article that is on a female student's body, which as a cape, without it being a result of sexual harassment. Defendants continued to advise S.B. to move forward with a Title IX complaint against Plaintiff against the weight of the evidence. S.B. was not a victim of sexual harassment. Plaintiff was the victim of gender discrimination resulting in a false Title IX violation.

17

One common way to show pretext is with evidence that other similarly situated individuals who were not in the plaintiff's protected class engaged in the same conduct but were treated differently. *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994).

The present case is distinguishable from others brought before the court. In the present case, Defendants were directly involved and encouraged the conduct by a female student in which Defendants believed they could entrap students into a Title IX violation. Defendants continued on this pursuit in seeking a false confession from Plaintiff. When they failed to get a false confession, Defendants proceeded to file a frivolous Title IX complaint against Plaintiff. Multiple male students, in addition to Plaintiff, were charged with false Title IX violations. Some of the male students that were charged with Title IX violations as a result of the incident were not even present. This was a targeted attack against the male students as a result of Defendants actions. Against the weight of the evidence Plaintiff was viewed as the perpetrator as a result of his gender while S.B., as a female, was viewed as the victim.

### VII.    Breach of Contract Claims

Plaintiff asserts a contractual claim based on the alleged failure of Kenmare to follow the provisions regarding policies and procedures as outlined in the student handbook. While the Eighth Circuit has not yet ruled on the nature of a contract with public school students, the Court has ruled on the contractual relationship between

a University and its students. The relationship between the parties is contractual in nature, and the terms of the contract may be implied from the student handbook. *Ikpeazu v. University of Nebraska*, 775 F.2d 250, 253 (8th Cir. 1985).

An implied contract exists between public school students and their educational institutions. Students are required to abide by and follow the provisions provided for in the student handbook. Should the students breach a policy outlined in the student handbook, consequences may ensure up to and including expulsion from the school district. While consideration is not handed over in the same capacity as a University student, consideration does change hands through the form of tax payments based on residency and the enrollment of a student in the district school of their residence. As such, an implied contract exists laying the foundation for Plaintiff's breach of contract claim.

## VIII.    Negligent Infliction of Emotional Distress Claims

This Court recognized a cause of action for the intentional infliction of emotional distress under Restatement (Second) of Torts § 46 (1965), requiring proof of "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." *Muchow v. Lindblad*, 435 N.W.2d 918, 923-25 (N.D. 1989), The 'extreme and outrageous' threshold is narrowly limited to conduct that exceeds 'all possible bounds of decency' and which would arouse resentment against the actor and lead to an exclamation of "'outrageous'" by an

average member of the community. *Hougum v. Valley Memorial Homes*, 1998 ND 24, 574 N.W.2d 812 (1998).

For a claim of negligent infliction of emotional distress, a "plaintiff claiming negligent infliction of emotional distress must show 'bodily harm.'" *Id.* The bodily harm essential to sustain a claim for relief for negligent infliction of emotional distress is defined in Restatement 2d Torts § 15 (1965) as 'any physical impairment of the condition of another's body, or physical pain or illness.' *Hysjulien v. Hill Top Home of Comfort, Inc.*, 2013 ND 38, ¶ 44, 827 N.W.2d 533, 549-50 (2013). "Bodily harm may be caused not only by impact or trauma, but also by emotional stress." *Id.*

The emotional stress caused by Defendants exceeds all bounds of decency. Subjecting a minor to a frivolous Title IX complaint, rejection from those within his educational community, stress of adults that are supposed to support and protect him in his education environment attacking him, and realization that the repercussions of this false attack would have disastrous long-term impacts on his life caused severe emotional distress. Defendants are not immune from their actions as they did not lay a hand on Plaintiff, the emotional damage that they have caused this young man gives right to his claim for negligent infliction of emotional distress.

## IX.   Evidence Provided by Plaintiff

Defendants have provided attachments to their Motion to Dismiss that have not been authenticated by Plaintiff. As such, Plaintiff requests that this Court disregard the evidence provided by Defendant at this time as it is improper.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants Motion to Dismiss in its entirety. Plaintiff has laid out ample and adequate facts in the Complaint to support Plaintiff's causes of action. Plaintiff requests this honorable court allow the preceding causes of action to move forward to discovery and set a trial date. Should this honorable Court deem Plaintiff's claims inadequate, Plaintiff requests leave to amend the Complaint.


Dated: June 1, 2023                     Respectfully Submitted,

                                        */s/ Keith Altman*
                                        Keith Altman, Esq.
                                        THE LAW OFFICE OF KEITH ALTMAN
                                        33228 West 12 Mile Road, Suite 375
                                        Farmington Hills, Michigan 48331
                                        Telephone: (248) 987-8929
                                        keithaltman@kaltmanlaw.com
                                        *Attorney for Plaintiff*

21

## **CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies that this brief complies with the requirements

of D.N.D. L. Civ. R. 7.1(A)(1).


Dated: June 1, 2023                                  Respectfully Submitted,

                                                     */s/ Keith Altman*

## **CERTIFICATE OF SERVICE**

I, Keith Altman, do hereby certify that I electronically filed the foregoing document with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record as listed in the Service List in effect on the date of electronic filing.

SO CERTIFIED, this 1st day of June, 2023.

/s/ *Keith Altman*
Keith Altman, Esq.